UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| V.R. Vallery for Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 72); AND

MOTION FOR ATTORNEY['S] FEES, REPRESENTATIVE ENHANCEMENTS, AND COST REIMBURSEMENT (DKT. 73)

**I.    Introduction**

Plaintiffs Carlos Castellon ("Castellon"), Juan Gabriel Acosta ("Acosta"), and Alejandro Avila ("Avila"), individually and on behalf of all others similarly situated, brought this class action against two groups of Defendants: (i) Penn-Ridge Transportation, Inc. ("Penn-Ridge") and its affiliates, and (ii) Best Buy Co., Inc. ("Best Buy") and its affiliates. Dkt. 1-1. The action was filed in the San Bernardino Superior Court on June 22, 2015, and was removed on October 5, 2018. Dkt. 1 at 2.

On July 19, 2019, a hearing before Judge Guilford was held on Plaintiffs' Corrected Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Motion"). Dkt. 49.[1] Judge Guilford granted the Preliminary Approval Motion (the "Preliminary Approval Order"). Dkt. 50. The Preliminary Approval Order certified a Settlement Class. *Id.* at 6-7, 8. A Motion for Final Approval of Class Action Settlement (the "Final Approval Motion" (Dkt. 72)) and a Motion for Attorney['s] Fees, Representative Enhancements, and Cost Reimbursement (the "Fees' Motion" (Dkt. 73)) were filed on April 6, 2020. A hearing on the Final Approval Motion and the Fees' Motion was held on October 19, 2020. Dkt. 83. Following the hearing, the parties filed additional material in support of the two motions. Dkt. 85.

For the reasons stated in this Order, the Final Approval Motion and the Fees' Motion are **GRANTED**.

**II.    Factual and Procedural Background**

    **A.    Summary of the Litigation**

Plaintiffs allege that Defendants improperly classified them as independent contractors, rather than

---

[1] Judge Guilford has since retired from his service, and the action was transferred to this bench officer.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

employees, for their work delivering and installing appliances. Dkt. 1-1. The Fourth Amended Complaint advances causes of action based on an alleged, corresponding failure to pay minimum wage, failure to pay overtime, failure to reimburse business expenses, failure to provide rest and meal breaks, failure to furnish accurate wage statements and failure to pay all wages due at separation. *Id*. The Preliminary Approval Order stated this case involved "four removals, three remands, three mediations, and two additional settlement conferences." Dkt. 50 at 1. After "extensive discovery" and "[a]rms-length settlement negotiations," the parties reached a settlement. *Id*. at 1-2.

> B.  Summary of Settlement Agreement and Preliminary Approval Amount

The Settlement Agreement defines the "Gross Settlement Amount" ("GSA") as the "maximum sum of $3,250,000." Dkt. 35-2 at 10. The "Net Settlement Amount" ("NSA") is defined as the balance of the GSA after deducting the following: PAGA payment; service fees; fees awarded to Plaintiffs' attorneys; litigation costs; and administrative expenses. *Id*. The Settlement Agreement provides that the NSA will be distributed on a partial claims-made basis to Settlement Class Members who do not opt-out. *See id*. at 19-20. A fixed payment will be distributed to all Settlement Class Members. *Id*. 19. It will be equal to 20 times the payment per shift agreed upon by the parties. *Id*.

An additional payment will be distributed to those persons who submit a claim that he or she worked more than 20 shifts. *Id*. at 19-20. The value of the additional payment will be set for each Settlement Class Member in proportion to how many shifts that person worked in excess of the baseline of 20 shifts. *Id*. at 33. A "Settlement Share" is the amount payable to each Settlement Class Member. It is the total of a Settlement Class Member's fixed payment and additional payment, if any. *Id*. at 14. The Settlement Agreement provides that, if the sum of all Settlement Shares is less than 40% of the NSA, then each Settlement Share will be increased, on a pro rata basis for each shift, so that the sum of all Settlement Shares equals 40% of the NSA. *Id* at 33. Thus, the Minimum Net Settlement Amount (the "MNSA") is 40% of the NSA. Once the MNSA is reached, Defendants are not required to pay any difference between the sum of all Settlement Shares and the GSA. *Id*. at 33-34.

The Settlement Agreement provides that attorney's fees awarded to Plaintiffs' counsel shall not exceed $1,083,333, which is calculated as "one-third" of the GSA. *Id*. at 6. The Settlement Agreement states that litigation costs shall not exceed $75,000 and will "consist of reasonable litigation costs actually incurred by [Plaintiffs' counsel] related to the Action and the settlement of the action as approved by the Court." *Id*. The Settlement Agreement provides that, if less than $1,083,333 is awarded to Plaintiffs' counsel in attorney's fees, a portion of the difference shall be distributed to the Settlement Class Members. *Id*. Thus, one-half of the fee difference ("Portion One") will be distributed to the Settlement Class Members on a pro rata shift basis in addition to the Settlement Shares. *Id*. at 34. The other one-half of the fee difference ("Portion Two") will be distributed to the Settlement Class Members "at an amount equivalent to the percentage of total Settlement Shares to the [NSA] with a minimum of at least 40% of Portion [Two] distributed to the Settlement Class Members. Portion [Two] will be distributed to the Settlement Class Members on a pro rata shift basis in addition to the Settlement Shares." *Id*.

The Settlement Agreement defines "Administrative Expenses" as the "actual costs incurred by and fees charged by the Settlement Administrator to administer the Settlement in the Action, all fees charged by the Special Master for services rendered as part of the resolution of any disputed Claims . . . , and all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. ED CV18-02136 JAK (KKx) | Date November 3, 2020 |
| Title Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | |

costs associated with the payment of any un-redeemed checks . . . ." Dkt. 35-2 at 4-5. The Administrative Expenses were "estimated not to exceed $40,000 in total." *Id.* The Settlement Agreement provides for incentive awards for the named plaintiffs in the amount of $15,000 for Castellon, $12,500 for Avlia and $12,500 for Acosta. *Id.* at 13.

The financial terms of the Settlement Agreement are summarized in the following table:

| | Amount | Percent |
|---|---|---|
| **Gross Settlement Amount** | $3,250,000.00 | 100% |
| Attorney's Fees | $1,083,333.33 | 33.33% |
| Litigation Costs | $75,000.00 | 2.31% |
| Incentive Awards | $40,000.00 | 1.23% |
| Administrative Expenses | $40,000.00 | 1.23% |
| PAGA Payment (75% of $50,000.00) | $37,500.00 | 1.15% |
| Net Settlement Amount | $1,974,666.67 | 60.74% |
| Minimum Net Settlement Amount (40% of Net Settlement Amount) | $789,866.67 | 24.30% |

See generally Dkt. 35-2.

    C.    Settlement Administration and Final Requested Amounts

On March 9, 2020, a Joint Motion for Order Approving Special Master and Continuance of Final Approval Hearing (the "Special Master Motion" (Dkt. 62)) was granted (the "Special Master Order" (Dkt. 68)). The Special Master Order approved the appointment of Steven G. Pearl as Special Master to resolve any disputed claims by Settlement Class Members who were seeking additional payment on the basis that they worked shifts in excess of the baseline of 20 shifts. Dkt. 68 at 1-2. The Special Master Order also approved an hourly rate of $1200, for up to 18 hours of work, for Special Master Pearl. *Id.* at 1-2. The Special Master Order recognized that, given these costs and those estimated for the Settlement Administrator, Administrative Expenses would total $47,600, plus the costs associated with the transfer of un-redeemed checks to the state. *Id.* at 5. This sum exceeds the $40,000 of Administrative Expenses approved in the Preliminary Approval Order. *Id.* However, the Special Master Order found that the Special Master costs were not unreasonable in light of Plaintiffs' representation that the litigation costs would be considerably lower than the $75,000 maximum provided by the Settlement Agreement and accepted by the Preliminary Approved Order. *Id.*

In support of the Final Approval Motion, the following financial terms of the Settlement Agreement based on actual litigation costs and the increased Administrative Expenses are provided:

| | Amount | Percent |
|---|---|---|
| **Gross Settlement Amount** | $3,250,000.00 | 100% |
| Attorney's Fees | $1,083,333.33 | 33.33% |
| Litigation Costs | $30,578.78 | 0.94% |
| Incentive Awards | $40,000.00 | 1.23% |
| Administrative Expenses | $47,600.00 | 1.46% |
| PAGA Payment (75% of $50,000.00) | $37,500.00 | 1.15% |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
|---|---|---|---|
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

| | | |
|---|---|---|
| Projected Net Settlement Amount | $2,010,987.89 | 61.88% |
| Projected Minimum Net Settlement Amount (40% of Projected Minimum Net Settlement Amount) | $804,395.16 | 24.75% |

Dkt. 72 at 15.

Defendants' counsel provided the Settlement Administrator information on 1547 putative Settlement Class Members. Dkt. 72-25 ¶ 5. The Settlement Administrator determined there was incomplete or missing address information, or invalid Social Security numbers, for 89 of these individuals. *Id.* The Settlement Administrator mailed the Court-approved Notice Packet to the remaining 1458 putative Class Members. *Id.* ¶¶ 4, 7. Subsequently, 387 Notice Packets were returned by the U.S. Postal Service. *Id.* at ¶ 10. Of these, 55 had a forwarding address. *Id.* The Settlement Administrator performed a skip-trace that located updated addresses for another 311. *Id.* A case manager for the Settlement Administrator declares that, "Ultimately, [64] Notice Packets remain undeliverable." *Id.*

The Settlement Administrator did not receive any objections to the proposed settlement. *Id.* ¶ 15. The Settlement Administrator received a request for exclusion from one putative Settlement Class Member. *Id.* ¶ 14. The Settlement Administrator received 156 claim forms from Settlement Class Members in which each sought an additional payment. *Id.* ¶ 11. Of these, 102 claim forms were not disputed. *Id.* The remaining 54 claims forms were disputed. *Id.* Special Master Pearl denied 47 claims -- no extra shifts were credited to those claimants -- and approved seven claims. *Id.* ¶ 13. Two Settlement Class Members claimed shifts in excess of the number of shifts within the Class Period. Dkt. 72-6 at 19-21, 33-34. Specifically, Oscar Soriano claimed 5509 shifts in addition to the 20 shifts covered by the Fixed Payment (*id.* at 19) and Keith Walker claimed 3697 shifts in addition to 20 shifts covered by the Fixed Payment (*id.* at 33). The Settlement Agreement defines "Shift" as "one day during which the Class Member made a delivery . . . from June 22, 2011 to May 13, 2019." Dkt. 35-2 at 14. There are only 2893 days between June 22, 2011 and May 13, 2019. Thus, after subtracting the 20 shifts covered by the Fixed Payment, there are a maximum of 2873 shifts that can form the basis for Additional Payment. Nonetheless, the Special Master Pearl credited 5509 additional shifts to Soriano and 3697 additional shifts to Walker. Dkt. 72-6 at 21, 34.

Based on the foregoing, 1396 Settlement Class Members will receive the fixed payment amount and 109 class members will receive an additional payment. *Id.* ¶ 16. Requested attorney's fees total $812,500. Therefore, the Final Approval Motion presents final allocations as summarized in the following table:

| | Amount | Percent |
|---|---|---|
| **Total Settlement Value and Payment** | **$1,962,157.27** | **100%** |
| Attorney's Fees | $812,500.00 | 41.40% |
| Litigation Costs | $30,578.78 | 1.60% |
| Incentive Awards | $40,000.00 | 2.00% |
| Administrative Expenses | $47,600.00 | 2.40% |
| PAGA Payment (75% of $50,000.00) | $37,500.00 | 1.90% |
| Total Net Payment to Settlement Class Members | $993,978.49 | 50.70% |
|     Projected MNSA: $804,395.16 | | |
|     Attorney's Fees Difference: $189,583.33 | | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

Dkt. 72 at 16.

### III. Analysis

    A.    Final Approval of the Settlement Agreement

        1.    Legal Standards

           a)    Class Certification

The "threshold task" when deciding whether to grant final approval of a class action settlement is to "ascertain whether the proposed settlement satisfies the requirements of Fed. R. Civ. P. 23(a), which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). A court must also determine whether "the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Id.* at 1022.

           b)    Approval of the Settlement

Fed. R. Civ. P. 23(e) establishes a two-step process for determining whether a class action settlement should be approved. First, a court must make a preliminary determination as to whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). If it is so determined, following notice to the putative class members and a consideration of their responses, if any, the court determines whether final approval of the settlement is appropriate.

As noted, the Preliminary Approval Order was entered on July 19, 2019. In considering final approval, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). The following non-exclusive factors are among those that may be considered during both the preliminary and final approval processes:

    (1) the strength of the plaintiff's case;
    (2) the risk, expense, complexity, and likely duration of further litigation;
    (3) the risk of maintaining a class action status throughout the trial;
    (4) the amount offered in settlement;
    (5) the extent of discovery completed and the stage of the proceedings;
    (6) the experience and views of counsel;
    (7) any evidence of collusion between the parties; and
    (8) the reaction of the class members to the proposed settlement.

See *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458-60 (9th Cir. 2000).

Each factor does not necessarily apply to every class action settlement, and other factors may be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

applied. For example, courts often consider whether the settlement is the product of good faith, arms- length negotiations. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

As recently amended, Fed. R. Civ. P. 23(e) provides further guidance in evaluating whether a settlement is fair, reasonable and adequate. Thus, a court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3);[2] and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The factors set forth in Fed. R. Civ. P. 23(e) distill the considerations historically used by federal courts to evaluate class action settlements. As the comments of the Advisory Committee explain, "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but rather to address inconsistent "vocabulary" that had arisen among the circuits and "to focus the court and the lawyers on the core concerns" of the fairness inquiry. Advisory Committee Comments to 2018 Amendments to Rule 23.

>    2.   Application

The Preliminary Approval Order determined that the Settlement Class met the requirements of Fed. R. Civ. P. 23. Dkt. 50 at 6-7. There is no new information that warrants any change in that outcome. Therefore, for the reasons stated in the Preliminary Approval Order, the requirements of both Rule 23(a) and (b)(3) have been satisfied. Consequently, for the purpose of adopting and implementing the Settlement Agreement, the following Settlement Class is certified:

> All individuals who personally performed services as Drivers and/or Helpers delivering products for Penn Ridge Transportation, Inc. and/or Control Transportation Services, Inc. pursuant to Penn Ridge and/or CTSI contracts with one or more of the Best Buy Defendants within the State of California from June 22, 2011 to May 13, 2019.

---

[2] Fed. R. Civ. P. 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

The Preliminary Approval Order also analyzed the appropriateness of the settlement and determined that it was a "reasonable compromise." Dkt. 50 at 7-8. At the preliminary approval stage, the reaction of Settlement Class Members was unknown. Following the preliminary approval, notice was sent to the Settlement Class Members who were notified of their rights to opt out of, or object to, the settlement.

Only one putative Settlement Class Member opted out of the proposed settlement. Dkt. 72-25 ¶ 14. None objected. *Id.* ¶ 15. The Settlement Class has 1396 members. *Id.* ¶ 16. A low proportion of opts outs and objections "indicates that the class generally approves of the settlement." *In re Toys R Us-Delaware, Inc. -- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 456 (C.D. Cal. 2014) (citing cases); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." (quoting *Nat'l Rural Telecomms. Corp. v. DirecTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004))).

It is noteworthy that the settlement was reached after approximately five years of litigation, three mediations, and two additional settlement conferences. Dkt. 72-1 ¶¶ 24-25. The mediations were conducted by two experienced neutrals: Hon. Carl West (Ret.) and Mark Rudy, Esq. *Id.* ¶ 26. Plaintiffs' counsel spent more than 300 hours on the mediation and settlement process. *Id.* ¶ 28. Plaintiffs' counsel vigorously litigated this action on behalf of the class, and the proposed settlement is the result of arms-length and intensive negotiations.

Based on the foregoing, and the analysis presented in the Preliminary Approval Order, which is incorporated by this reference, the proposed settlement is fair, reasonable, and adequate.

    B.    Class Notice and Release

A proposed Notice Packet was filed. Dkt. 35-2 at 61-81. The Preliminary Approval Order found the Notice Packet to be sufficient and the associated procedures to be reasonable. Dkt. 50 at 8. The proposed notice plan was then fully implemented. *See* Dkt. 72-25. There are no material changes that would affect the prior analysis as to sufficiency of the Notice Packet and notice plan.

Upon the filing of the Notice of Funding: (i) all Settlement Class Members shall be deemed to be within the Settlement Class for all purposes of the Settlement, and shall be bound by the terms and conditions of the Settlement Agreement, including all orders issued pursuant thereto; (ii) the Released Parties shall be released and discharged from any and all liability with respect to Class Member's Released Claims to the extent set forth in the Settlement Agreement, thereby barring Settlement Class Members from pursuing in any fashion any claims against Defendants or the Released Parties any and all of the Released Claims; and (iii) Defendants Penn Ridge Transportation, Inc. and Control Transportation Services, Inc. shall be prohibited and permanently barred from pursuing in any fashion any claims against named or unnamed contractors, or Class Members, arising out of the claims made in this action, including any claim for indemnification for payments made in settling this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

  C. Allocations to the Class

Pursuant to the reduction of 3460 Shifts claimed as Additional Payments from the Special Master's determination discussed in Section III(C)(2), the Payment Per Shift is increased to $6.21 from $6.08 per Shift as shown in the Final Approval Motion (Dkt. 72-18). This increase is based on the Total Net Payment to Settlement Class Members divided by the updated Total Number of Shifts for Settlement Shares ($993,978.49 ÷ 160,042 = $6.21).

  1. Fixed Amount Payments

Each Settlement Class Member will receive a Fixed Amount Payment of $124.20 based on twenty (20) Shifts at the increased Payment Per Shift of $6.21. The Fixed Amount Payments, in the aggregate, represent 27,920 Shifts (20 Shifts x 1396 Settlement Class Members = 27,920).

  2. Additional Payments

109 of the Settlement Class Members will receive Additional Payments based on the Shifts provided in the chart lodged with the parties' Joint Notice of Lodging and Memorandum of Points and Authorities in Support of Proposed Amended Final Approval Order (Dkt. 85-2 at 2-5), which are based on the undisputed Shifts claimed, the Special Master's determination of disputed Shifts claimed, and the Court's adjustment as outlined in this Order. The additional payments, in aggregate, represent 132,122 Shifts for Additional Payments after the reductions discussed below.

Pursuant to the Settlement Agreement and the Preliminary Approval Order, the Special Master's determination of disputed Shifts to be credited shall be final and binding on the Parties and the Settlement Class Members for purposes of this Settlement. However, the Special Master's determination was not binding on the Court, which exercises its authority and discretion to reduce the Shifts awarded to Oscar Soriano (Claimant No. 39) and Keith Walker (Claimant No. 149) as stated immediately below.

The Special Master's Shift credit is decreased as follows: (i) for Claimant No. 39 from 5509 to 2873; and (ii) for Claimant No. 149, from 3697 to 2873. The Settlement provides that a "Shift" means one day of deliveries a Settlement Class Member made on behalf of Penn Ridge and/or CTSI pursuant to contracts with Best Buy as a Driver or Helper during the Class Period. Dkt. 72-26 at 13. There are only 2893 days during the Class Period and twenty (20) Shifts were covered by the Fixed Payment, making 2873 Shifts the maximum number of Shifts that could be used as a basis to make an award on a claim for Additional Payment.

On November 13, 2019, the Settlement Administrator mailed these Claimants a Notice of Dispute to Submitted Claim Form (Dkt. 35-12, Exh. C) advising them that Defendants disputed their respective claims for Additional Payments. Neither Claimant responded to the Notice. Based on the foregoing, the reduction of the Shifts claimed is necessary to avoid paying these two Claimants an Additional Payment that is disproportionately larger than what will be made to other Claimants merely because they asked for more than the maximum allowable Shifts. Further, this correction increases the value of the Payment Per Shift to the Settlement Class Members, thereby treating all Class Members equitably and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

in the same manner relative to each other as required under Fed. R. Civ. P. 23(e)(2)(D), and conforms the awards to the provisions of the Settlement Agreement.

The individual settlement amounts to be paid to Settlement Class Members as provided for by the Settlement and this order are fair and reasonable.

Upon filing of the Notice of Funding, it is ordered that the payment of the Fixed Amounts and Additional Payments be made to the Settlement Class Members in accordance with the terms of the Settlement and this Order.

      D.      Litigation Costs

Plaintiffs' counsel seeks to recover $30,578.78 in litigation costs. Dkt. 73 at 26. This amount is less than half the $75,000 amount accepted in the Preliminary Approval Order. Counsel have submitted a detailed line-item accounting for the costs incurred. Dkt. 72-3. No Settlement Class Member objected to the litigation costs. Robert M. Kitson declares that approximately 50% of the litigation costs were for mediation fees. Dkt. 72-1 ¶ 29. The line-item accounting of costs supports that statement. Dkt. 72-3 at 1. Given the length and complexity of this litigation, the litigation costs incurred by Plaintiffs' counsel are reasonable.

Upon filing of the Notice of Funding, it is ordered that the payment of litigation costs in the amount of $30,578.78 shall be made to Plaintiffs' counsel in accordance with the terms of the Settlement Agreement.

      E.      Administrative Expenses

The Special Master Order (Dkt. 68) accepted as reasonable Administrative Expenses of $47,600. This amount was based on an estimated cost of $26,000 for the Settlement Administrator and $21,600 for Special Master Pearl. Dkt. 68 at 5. In approving these expenses, the Special Master Order accepted the parties' representation that the litigation costs would be considerably less than the $75,000 maximum provided for by the Settlement Agreement. Dkt. 68. As noted, Plaintiffs ultimately seek litigation costs of $30,578.78. Dkt. 72 at 16. For these reasons, the Administrative Expenses of $47,600 are reasonable.

Upon filing of the Notice of Funding, it is ordered that the payment of administrative expenses in the amount of $47,600 shall be made, with $26,000 for the Settlement Administrator and $21,600 for Special Master Pearl in accordance with the terms of the Settlement Agreement.

      F.      PAGA Payment

The LWDA has explained that:

> when a PAGA claim is settled, the relief provided for under the PAGA [must] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court [must] evaluate whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
|---|---|---|---|
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA.

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (quoting comments submitted by LWDA). In compliance with the requirements of Cal. Lab. Code § 2699(l)(2), Class Counsel provided notice to the Labor and Workforce Development Agency ("LWDA") of the proposed Settlement. Dkts. 72-5, 72-16. Class Counsel represents that LWDA did not make any objections in response. The Settlement Agreement allocates $37,500 to the PAGA claim. This proposed allocation is sufficient. Although it is modest in light of the overall Gross Settlement Amount, it adequately values the risk presented to Defendants regarding continued litigation of this claim.

Upon filing of the Notice of Funding, it is ordered that a PAGA Payment in the amount of $37,500 shall be made to the LWDA in accordance with the terms of the Settlement Agreement.

    G.    Incentive Awards

        1.    <u>Legal Standards</u>

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. To determine the reasonableness of such an award, the following factors may be considered:

    1)    The risk to the class representative in commencing suit, both financial and otherwise;
    2)    the notoriety and personal difficulties encountered by the class representative;
    3)    the amount of time and effort spent by the class representative;
    4)    the duration of the litigation; and
    5)    the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

        2.    <u>Application</u>

Plaintiffs seek the following incentive awards: $15,000 for Castellon; $12,500 for Avila and $12,500 for Acosta. These named Plaintiffs have spent a significant amount of time assisting in this case -- approximately 120 hours by Castellon (Dkt. 72-22 ¶ 14), 45 hours by Avila (Dkt. 72-23 ¶ 14), and 60 hours by Acosta (Dkt. 72-24 ¶ 15). The memorandum in support of the Fees' Motion states that Castellon participated in the process before this action was filed on June 22, 2015. Dkt. 73 at 19. That memorandum also states that Avila and Acosta joined as named plaintiffs when the Second Amended Complaint was filed on November 22, 2016. *Id.* Castellon declares that a "'contractor' threatened [him] with a lawsuit if the 'contractor' was required to indemnify Penn Ridge for any damages in this lawsuit." Dkt. 72-22 ¶ 13. He also declares "[t]his stigma was made worse by the fact that the southern California retail home delivery industry is relatively small. Thus, there was significant risk to my reputation, future employability, and the potential that if the case was prosecuted and lost that the Defendants may seek certain costs and potentially attorney's fees against me." *Id.* Avila and Acosta

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

each declares that he also feared stigmatization that would impair his future employment opportunities. Dkt. 72-23 ¶ 14; Dkt. 72-24 ¶ 15. For these reasons, the incentive awards are reasonable.

Subject to the Notice of Funding, or Plaintiffs' Right of Rescission, it is ordered that Service Fee payments shall be made as follows: to Plaintiff Castellon in the amount of $15,000.00; to Plaintiff Avila in the amount of $12,500.00; and to Plaintiff Acosta in the amount of $12,500.00.

    H.    Attorney's Fees

        1.    <u>Legal Standards</u>

Attorney's fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement"; however, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *see also* Fed. R. Civ. P. 23(h). "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Staton*, 327 F.3d at 964. Thus, a district court must "assure itself that the fees awarded in the agreement were not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel." *Id.* at 965.

In calculating the reasonable amount of attorney's fees in a class action, district courts have discretion to choose between employing a lodestar method or a so-called "percentage method." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). When courts use the lodestar method, they do not need to crosscheck using the percentage method. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019). The Ninth Circuit has explained that requiring a percentage-method cross-check "would make 'little logical sense' because the lodestar method yields a fee that is presumptively reasonable." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019) (quoting William B. Rubenstein, 5 Newberg on Class Actions § 15:92 (5th ed. 2018)). It is more appropriate to employ a lodestar method rather than a percentage method where a settlement "will be paid on a claims-made basis with no cap to the relief available." *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, No. 05-05437 RBL, 2008 WL 1901988, at *1 (W.D. Wash. Apr. 24, 2008). On the other hand, courts have used the percentage method where the settlement will be distributed on a claims- made basis but there is a maximum fund size. *See, e.g., Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. After the lodestar amount is determined, a trial court "may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). A court has discretion to "adjust the lodestar upward or downward using a multiplier that reflects a host of reasonableness factors, including the quality of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016) (internal quotation marks and citation omitted).

2. Application

To ensure a complete analysis, the attorney's fees requested in this action are assessed through both the lodestar method and the percentage method. This shows that an attorney's fees award of $812,500.00 is reasonable.

Plaintiffs' attorneys calculated a lodestar figure of $816,765.00 based on the following hourly rates for the attorneys who worked on the action:

| Attorney/Staff | Experience | Hourly Rate |
|---|---|---|
| David P. Myers | Firm Principal 1998 law school graduate | $750 |
| Robert M. Kitson | Of counsel 1995 law school graduate | $750 |
| Jason Hatcher | Associate 2012 law school graduate | $575 |
| Ann Hendrix | Associate 2008 law school graduate | $575 |
| Morgan Good | Associate 2016 law school graduate | $375 |
| Paralegals and Assistants | N/A | $75-$175 |

Dkts. 72-4; 73 at 14; 73-1 at 23.

In support of the Fees' Motion, Plaintiffs' attorneys filed the declaration of Barrett Litt, who was formerly a partner of Robert M. Kitson. Dkt. 73-1 at 22. Litt states that he has expertise about "attorneys' fees in civil rights and class action cases." *Id.* at 4. He includes a detailed comparison of the hourly rates charged by Plaintiffs' attorneys and those charged by other firms. *Id.* at 23-48. Litt declares that Plaintiffs' attorneys' "proposed rates are more than reasonable, and are well within the reasonable range of rates for attorneys of similar years of experience litigating complex cases, including class actions, in the Central District of California." *Id.* at 23.

Plaintiffs also filed a declaration by Kitson. An exhibit to his declaration includes the following summary of the hours worked by Plaintiffs' attorneys on ten categories of tasks:

| Task 1: Complaint/Amended Pleadings | | | |
|---|---|---|---|
| Attorney | Hourly Rate | Hours | Fee |
| David P. Myers | $750.00 | 0 | $0.00 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
|---|---|---|---|
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

| Attorney | Hourly Rate | Hours | Fee |
|---|---|---|---|
| Robert M. Kitson | $750.00 | 2.9 | $2,175.00 |
| Jason Hatcher | $575.00 | 35.6 | $20,470.00 |
| Ann Hendrix | $575.00 | 0.7 | $402.50 |
| Morgan Good | $375.00 | 1.3 | $487.50 |
| Fee Request | | 40.5 | $23,535.00 |

| Task 2: Status Conference/Rule 16 Conferences | | | |
|---|---|---|---|
| Attorney | Hourly Rate | Hours | Fee |
| David P. Myers | $750.00 | 0.5 | $375.00 |
| Robert M. Kitson | $750.00 | 7.8 | $5,850.00 |
| Jason Hatcher | $575.00 | 29.7 | $17,077.50 |
| Ann Hendrix | $575.00 | 0 | $0.00 |
| Morgan Good | $375.00 | 0 | $0.00 |
| Fee Request | | 38 | $23,302.50 |

| Task 3: Discovery | | | |
|---|---|---|---|
| Attorney | Hourly Rate | Hours | Fee |
| David P. Myers | $750.00 | 0.4 | $300.00 |
| Robert M. Kitson | $750.00 | 29.3 | $21,975.00 |
| Jason Hatcher | $575.00 | 97.2 | $55,890.00 |
| Ann Hendrix | $575.00 | 0 | $0.00 |
| Morgan Good | $375.00 | 0 | $0.00 |
| Fee Request | | 126.9 | $78,165.00 |

| Task 4: Motions | | | |
|---|---|---|---|
| Attorney | Hourly Rate | Hours | Fee |
| David P. Myers | $750.00 | 1.6 | $1,200.00 |
| Robert M. Kitson | $750.00 | 34.5 | $25,875.00 |
| Jason Hatcher | $575.00 | 285.5 | $164,162 |
| Ann Hendrix | $575.00 | 1.9 | $1,092.50 |
| Morgan Good | $375.00 | 7.7 | $2,887.50 |
| Fee Request | | 331.2 | $195,217.50 |

| Task 5: Misc. Case Developments/Management/Correspondence | | | |
|---|---|---|---|
| Attorney | Hourly Rate | Hours | Fee |
| David P. Myers | $750.00 | 1.4 | $1,050.00 |
| Robert M. Kitson | $750.00 | 7.6 | $5,700.00 |
| Jason Hatcher | $575.00 | 122.4 | $70,380.00 |
| Ann Hendrix | $575.00 | 0.7 | $402.50 |
| Morgan Good | $375.00 | 0 | $0.00 |
| Fee Request | | 132.1 | $77,532.50 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

| Task 6: Mediation & Settlement | | | |
|---|---|---|---|
| Attorney | Hourly Rate | Hours | Fee |
| David P. Myers | $750.00 | 42.4 | $31,800.00 |
| Robert M. Kitson | $750.00 | 87.2 | $65,400.00 |
| Jason Hatcher | $575.00 | 221.1 | $127,132.50 |
| Ann Hendrix | $575.00 | 0 | $0.00 |
| Morgan Good | $375.00 | 0 | $0.00 |
| Fee Request | | 350.7 | $224,332.50 |

| Task 7: Preliminary Approval Motion | | | |
|---|---|---|---|
| Attorney | Hourly Rate | Hours | Fee |
| David P. Myers | $750.00 | 0.5 | $375.00 |
| Robert M. Kitson | $750.00 | 21 | $15,750.00 |
| Jason Hatcher | $575.00 | 24.3 | $13,972.50 |
| Ann Hendrix | $575.00 | 0 | $0.00 |
| Morgan Good | $375.00 | 0 | $0.00 |
| Fee Request | | 45.8 | $30,097.50 |

| Task 8: Claim Process | | | |
|---|---|---|---|
| Attorney | Hourly Rate | Hours | Fee |
| David P. Myers | $750.00 | 10.4 | $7,800.00 |
| Robert M. Kitson | $750.00 | 3.9 | $2,925.00 |
| Jason Hatcher | $575.00 | 27.9 | $16,042.50 |
| Ann Hendrix | $575.00 | 0 | $0.00 |
| Morgan Good | $375.00 | 0 | $0.00 |
| Fee Request | | 42.2 | $26,767.50 |

| Task 9: Disputed Claim Process | | | |
|---|---|---|---|
| Attorney | Hourly Rate | Hours | Fee |
| David P. Myers | $750.00 | 14 | $10,500.00 |
| Robert M. Kitson | $750.00 | 4.4 | $3,300.00 |
| Jason Hatcher | $575.00 | 90.7 | $52,152.50 |
| Ann Hendrix | $575.00 | 0 | $0.00 |
| Morgan Good | $375.00 | 0 | $0.00 |
| Fee Request | | 109.1 | $65,952.50 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
|---|---|---|---|
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

| Task 10: Final Approval Motions | | | |
|---|---|---|---|
| Attorney | Hourly Rate | Hours | Fee |
| David P. Myers | $750.00 | 4.4 | $3,300.00 |
| Robert M. Kitson | $750.00 | 33.6 | $25,200.00 |
| Jason Hatcher | $575.00 | 71.2 | $40,940.00 |
| Ann Hendrix | $575.00 | 0 | $0.00 |
| Morgan Good | $375.00 | 0 | $0.00 |
| Fee Request | | 109.2 | $69,440.00 |

Dkt. 72-4.

As shown by these tables, Plaintiffs' counsel had worked 1328 hours on this action as of the filing of the Final Approval Motion. Dkt. 72-1 ¶ 39. This is not an unreasonable amount of time for an action that has been litigated for approximately five years, and involved "four removals, three remands, three mediations, and two additional settlement conferences." Dkt. 50 at 1. The Preliminary Approval Order characterized discovery in this action as "extensive." Id. However, a review of the hours billed by task shows that some of these hours should be reduced in considering the proposed fee award because more time was spent by the attorneys than necessary, including when two attorneys spent time on the same task. These reductions are as follows: (i) $3535 from Task 1; (ii) $302.50 from Task 2; (iii) $2500 from Task 4; (iv) $1500 from Task 5; (v) $1000 from Task 9; and (vi) $2000 from Task 10. These reductions total $10,837.50. This reduces the lodestar figure from $816,765.00 to $805,927.50.

When the total amount of these reductions is considered as part of the lodestar analysis, it is offset by the value of non-attorney work that could have been, but was not, included in the lodestar calculation. "In applying the 'lodestar method,' courts consider non-attorney fees, such as paralegal, secretarial, and technician services, as part of the attorney's fees calculation." *Ctr. for Biological Diversity v. EPA*, No. C 17-00720 WHA, 2017 U.S. Dist. LEXIS 213709, at *10 (N.D. Cal. Dec. 4, 2017). Plaintiffs' counsel presented evidence that paralegals, support staff, and law clerks spent 507.9 hours on the action. Dkt. 72-1 ¶ 31; Dkt. 72-4 at 5. Plaintiff claims hourly rates between $75 and $175 for these staff members. Dkt. 72-4 at 5. The total value of this work, if the stated hourly charges were applied, is $78,086.50. Dkt. 72-4 at 5. This more than offsets the $10,837.50 adjustment stated earlier even if the hours worked were more than necessary or if the hourly rates should have been lower. For these reasons, the requested attorney's fees award of $812,500 is reasonable.

That the requested fee award is reasonable is confirmed by the application of the percentage method analysis. The proposed award is 25% of the Gross Settlement Amount and 41% of the Total Settlement Value and Payment. "Ninth Circuit precedent requires courts to award class counsel fees

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed." *Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *5 (N.D. Cal. Feb. 20, 2015); *cf. Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011) ("It is well established that, in claims made or class reversion cases where there is a maximum fund, and unclaimed funds revert to the defendant, it is appropriate to award class fund attorneys' fees based on the gross settlement fund."). Thus, the relevant percentage here is that the attorney's fee award is 25% of the Gross Settlement Amount.

The Ninth Circuit has recognized that 25% of a gross settlement fund is the benchmark for a reasonable attorney's fee award in a class action proceeding. *See Staton*, 327 F.3d at 968. The reasonableness of such an award in this action is confirmed by those made in similar ones. *See Cicero v. DirecTV, Inc.*, EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) ("California cases in which the common fund is small, tend to award attorneys' fees above the 25% benchmark"). More particularly, a review of California cases in other districts reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million."); *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1127 (C.D. Cal. 2008) (holding attorneys' fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark).

The reasonableness of the requested fee award is also confirmed for other reasons. *First*, positive results were obtained for the Settlement Class Members. The total net payment of $993,978.49 will provide recovery to 1396 Settlement Class Members. Dkt. 72-25 ¶ 16.

*Second*, Plaintiffs' counsel assumed financial risks in representing the putative Class Members. Plaintiffs' counsel worked on a contingency fee basis for nearly five years with no assurance of any compensation or reimbursement of costs had Defendants prevailed on the merits. Dkt. 72-1 ¶ 31. During this time, counsel devoted significant time to the matter. *Id.*

*Third*, no Class Member objected to the requested fee award. The Class Notice stated that Plaintiffs' attorneys would seek fees in an amount not to exceed $1,083,333. Dkt. 72-26. Plaintiffs' attorneys have ultimately requested less than that amount.

For these reasons, the requested award of $812,500.00 in attorney's fees is approved.

Upon filing of the Notice of Funding, it is ordered that attorney's fees in the amount of $812,500.00 be paid to The Myers Law Group, A.P.C. in accordance with the terms of the Settlement.

### IV.   Conclusion

For the foregoing reasons, the Final Approval Motion and the Fees' Motion are **GRANTED**. The final allocations of the Settlement Funds are summarized in the following table:

| | Amount | Percent |
|---|---|---|
| **Total Settlement Value and Payment** | $1,962,157.27 | 100% |
| Attorney's Fees | $812,500.00 | 41.40% |
| Litigation Costs | $30,578.78 | 1.60% |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV18-02136 JAK (KKx) | Date | November 3, 2020 |
|---|---|---|---|
| Title | Carlos Castellon v. Penn-Ridge Transportation, Inc. et al. | | |

| | | |
|---|---|---|
| Incentive Awards | $40,000.00 | 2.00% |
| Administrative Expenses | $47,600.00 | 2.40% |
| PAGA Payment (75% of $50,000.00) | $37,500.00 | 1.90% |
| Total Net Payment to Settlement Class Members Projected MNSA: $804,395.16 Attorney's Fees Difference: $189,583.33 | $993,978.49 | 50.70% |

Defendants shall remit these Settlement Funds, in the amount of $1,962,157.27, less any amount previously paid toward the Administrative Expenses, to the Settlement Administrator, Simpluris, Inc., within 10 days of the issuance of this Order in accordance with Section VI(3) of the Settlement Agreement.

Within 21 days of the issuance of this Order, Plaintiffs' Counsel shall file either a Notice of Funding advising that Defendants have provided the Settlement Funds to the Settlement Administrator, or a Notice of Rescission with the Court in accordance with Sections X(3) and IX(3) of the Settlement Agreement.

The Court retains exclusive and continuing jurisdiction over the Action, the Class Representatives, the Class and Defendants for purposes of supervising the consummation, administration, implementation, enforcement and interpretation of the Settlement Agreement and all other matters covered in this Order.

Upon the filing of a Notice of Funding by Class Counsel, a Supplemental Final Approval Order will be issued, and Judgment will be entered.